UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNATHAN PAK, M.D.,<br><br>    Plaintiff,<br><br>    v.<br><br>GUARDIAN LIFE INSURANCE COMPANY OF AMERICA,<br><br>    Defendant. | Case No. 21-cv-05032-WHO<br><br>**ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 30 |

Plaintiff Johnathan Pak filed suit against defendant Guardian Life Insurance Company of America ("Guardian"), asserting claims of breaches of contract and of the covenant of good faith and fair dealing arising from Guardian's denial of Pak's claim for total disability benefits. The issue in Pak's motion for partial summary judgment is whether his "occupation," as the term is defined in his insurance policies, is pediatric anesthesiology. The contract language states that a claimant's specialty is his occupation if he *limits* his work to that specialty; specialty certification alone, which is what Pak acontends, does not suffice. There is a dispute of material fact over whether Pak limited his pre-disability work to pediatric anesthesiology. As a result, summary judgment is DENIED.

**BACKGROUND**

Pak has worked as a medical doctor for over 20 years. *See* Compl. [Dkt. No. 1] ¶ 8. After completing a residency in anesthesiology, he received a license in general anesthesiology in 2005. Mot. for Summ. J. ("MSJ") [Dkt. No. 30] 3:20-23 (citing Pak Decl., Ex. C). In 2014, he received specialty certification in pediatric anesthesiology. *Id.* at 3:28-4:3 (citing Pak Decl., Ex. D). Both certifications were issued by the American Board of Anesthesiology ("the Board"). *See* Pak Decl., Exs. C-D.

Pak purchased his first of four long-term disability insurance policies from Guardian in 2003. MSJ at 3:5-8 (citing Pak Decl., Ex. A). The policies include the following statements:

> **Total Disability**
>
> Until we have paid benefits for five years in the same claim, total disability means that, because of sickness or injury, you are not able to perform the major duties of your occupation.
>
> After that in the same claim, total disability means that, because of sickness or injury, you are not able to perform the major duties of your occupation and you are not at work in any occupation.
>
> Your occupation means the regular occupation (or occupations, if more than one) in which you are engaged at the time you become disabled.
>
> If your occupation is limited to a single medical specialty certified by the American Board of Medical Specialties or single dental specialty recognized by the American Dental Association, we will deem your specialty to be your occupation.

*See, e.g.,* Pak Decl., Ex. A at 9. One of the policies includes an additional provision: "You will be totally disabled even if you are at work in some other capacity so long as you are not able to work in your occupation." *See id*. at 106.

In 2018, Pak began experiencing migraine headaches and accompanying symptoms—including nausea, dizziness, and blurred vision—for which he sought medical treatment. MSJ at 4:13-16; Compl. at ¶ 10. Pak contends that as his symptoms worsened, "it became unsafe for [him] to continue working as a pediatric anesthesiologist." MSJ at 4:16-17. He was "unable to intubate the small airways of pediatric patients, perform complex calculations involving the chemistry of anesthesia for highly sensitive procedures, or administer intravenous therapy for pediatric patients." *Id*. at 4:17-20. "On one occasion, a pediatric patient nearly lost his life as a result," and Pak "stopped performing pediatric anesthesia and relinquished his hospital privileges." *Id*. at 4:20-21.

On July 23, 2019, Pak filed a disability claim with Guardian, listing his occupation as "Pediatric and General Anesthesiologist." *Id*. at 4:22; Oppo. [Dkt. No. 33] at 4:7-10 (citing Kelly Decl., Ex. 2). A month later, Guardian sent Pak a letter "requesting additional information to

document [Pak's] occupational duties and income prior and subsequent to August 2018." Compl. at ¶ 17.

In March 2020, Guardian sent Pak a check for $41,575.16 for residual disability benefits and two additional checks totaling $10,223.14, which Pak contends were refunds of his premiums.[1]  Oppo. at 5:7-8; Compl. at ¶ 32.  That same month, Pak provided Guardian with a progress report stating that he was "completely unable to work as a pediatric anesthesiologist." Oppo. at 5:15-18 (citing Kelly Decl., Ex. 6).  Guardian, meanwhile, "performed a financial and occupational analysis" of Pak's "Current Procedural Terminology" ("CPT") codes, a medical coding system that describes "medical, surgical, laboratory, anesthesiology, and diagnostic services performed by a physician." *Id.* at 5:20-24 (citing Kelly Decl., Ex. 7).

On July 2, 2020, Guardian notified Pak of its decision denying Pak's claim for total disability benefits, contending that he was not "totally disabled" under the policies.  *See* Kelly Decl., Ex. 9.  According to Guardian, Pak has two occupations: anesthesiology and pediatric anesthesiology.  Oppo. at 2:13-14.  The insurance company said Pak is only "totally disabled" under the policy terms if he is "disabled from both occupations.  *See* Oppo. at 4:2-3.

In October 2020, Pak filed a complaint in California Superior Court for the City and County of San Francisco, alleging breach of contract and breach of the covenant of good faith and fair dealing.  *See* Dkt. No. 1.  Guardian removed the case to federal court on June 29, 2021.  *See id.*  Pursuant to Civil Local Rule 7-1(b), Pak's motion for partial summary judgment is suitable for disposition without oral argument.

## LEGAL STANDARD

"The standard applied to a motion seeking partial summary judgment is identical to the standard for a motion seeking summary judgment of the entire case." *Kennedy v. U.S. Citizenship & Immigr. Servs.*, 871 F. Supp. 2d 996, 1006 (N.D. Cal. 2012).  Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In order to

---

[1] Guardian has "continued to evaluate [Pak's] claim and pay residual benefits when due," issuing residual disability payments totaling nearly $104,000.  *Oppo.* at 6:19-22.

prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* at 324. The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 257 (1986).

On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Id.* at 255. In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir. 1979).

Under California law, interpretation of an insurance policy is a question of law. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995). "Contract interpretation, as a question of law, is often amendable to summary judgment, although summary judgment may be inappropriate in a contract case if there is a dispute over a material fact necessary to interpret the contract." *Essex Walnut Owner L.P. v. Aspen Specialty Ins. Co.*, 335 F. Supp. 3d 1146, 1150 (N.D. Cal. 2018).

## DISCUSSION

### I.   The Policy Language

Under California law, "[w]hile insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." *Powerine Oil Co. v. Superior Ct.*, 37 Cal. 4th 377, 390 (2005) (citations omitted). The "fundamental goal" when interpreting a contract is "to give effect to the mutual intention of the parties." *Id.* "Such intent is to be inferred, if possible, solely from the written provisions of the contract." *Id.* Contractual language that is "clear and explicit" governs. *Id.*; *see also* Cal. Civ. Code § 1644 ("The words of a contract are to be understood in their ordinary and popular sense . . . unless used by the parties in a

4

1    technical sense, or unless a special meaning is given to them by usage, in which case the latter

2    must be followed."). Context further aids in the interpretation. *See Powerine,* 37 Cal. 4th at 391

3    ("[L]anguage in a contract must be construed in the context of that instrument as a whole, and in

4    the circumstances of that case, and cannot be found to be ambiguous in the abstract.").

5          If the language at issue is ambiguous, the court interprets that language "to protect the

6    objectively reasonable expectations of the insured." *Boghos v. Certain Underwriters at Lloyd's of*

7    *London*, 36 Cal. 4th 495, 501 (2005) (citation and quotation marks omitted).  "A policy provision

8    will be considered ambiguous when it is capable of two or more constructions, both of which are

9    reasonable." *Powerine*, 37 Cal. 4th at 390. That the policy does not define the term does not

10   make it ambiguous, nor does a disagreement between the parties about the term's meaning. *Id*. at

11   390-91. And the court "will not strain to create an ambiguity where none exists." *Waller*, 11 Cal.

12   4th at 18-19.

13         The parties focus on the so-called "medical specialty" provision of the policies: "If your

14   occupation is limited to a single medical specialty certified by the American Board of Medical

15   Specialties . . . we will deem your specialty to be your occupation." *See* MSJ at 7:4-7; Oppo. at

16   9:7-9. Each argues that the language is unambiguous, warranting a decision in their favor. *See*

17   MSJ at 7:9-10; Oppo. at 8:28. But they rely on different words in the provision in their arguments.

18         Pak contends that because he has a specialty certification in pediatric anesthesiology from

19   the Board, his occupation under the policy's plain language is a pediatric anesthesiologist. MSJ at

20   7:11-17. He denies that the policy language requires that he limit his work solely to the

21   performance of his specialized duties, arguing that any such condition would "completely obviate

22   a finding of a single occupation in every specialty because the performance of general duties is

23   part and parcel of any medical specialist's occupation." *Id*. at 7:22-26.

24         Guardian does not dispute that Pak holds the Board certification. *See* Oppo. at 3:14-18;

25   11:12-13 ("While Plaintiff is board certified in pediatric anesthesiology. . ."). Rather, Guardian

26   argues that because Pak did not limit his work to pediatric anesthesiology; his occupation under

27   the policies included both anesthesiology and pediatric anesthesiology. *See id*. at 3:18-4:2.

28         I first turn to the plain and ordinary meaning of the policy provision, namely, the word

"limited." The primary use of "limited" is as an adjective restricting a subject to a defined boundary. *See* MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com ("Confined within limits: restricted."); *see also Black's Law Dictionary* (10th ed. 2014) (defining "limit" as a "restriction or restraint" and a "boundary or defining line"). These definitions parallel how the word "limited" is used in an ordinary and popular sense—a lay person understands the term as one signaling some type of restraint.

But I cannot rely only on the word "limited" in evaluating the policy provision at issue. Words and phrases in the policy must not be construed in isolation. *See Powerine*, 37 Cal. 4th at 391. Therefore, the disputed policy language becomes, "[i]f your occupation is [restricted] to a single medical specialty certified by the American Board of Medical Specialties . . . we will deem your specialty to be your occupation."

Pak improperly focuses on the middle of the provision, assuming that certification in a medical specialty alone defines his occupation. But the provision does not state that a claimant's specialty is automatically deemed their occupation. Viewing the provision in its entirety, it focuses on whether the claimant was *restricted* to that specialty. This reading aligns with the context of the "total disability" provisions as a whole, which look at the work that the claimant was engaged in at the time of disability. *See* Pak Decl., Ex. A at 9 ("Your occupation means the regular occupation (or occupations, if more than one) in which you are engaged at the time you become disabled."), ("[T]otal disability means that, because of sickness or injury, you are not able to perform the major duties of your occupation and you are not at work in any occupation.").

This reading mirrors that in *Gross v. UnumProvident Life Ins. Co.*, 319 F. Supp. 2d 1129, 1145 (C.D. Cal. 2004), where the court noted that "it is important to determine what [the claimant] was actually doing before he became disabled, not only the specialty in which he had been trained." In *Gross*, the plaintiff was a board-certified orthopedic surgeon who became disabled and filed a claim with his insurer for total disability benefits. 319 F. Supp. 2d at 1142-43. Like Pak's policy, Gross's policy defined his occupation in terms of his work at the time of his disability. *Id.* at 1143. The court concluded that

> what matters is the occupation in which Plaintiff was engaged at the time he

> became disabled, not the occupation in which he was board-certified or what occupation he might have practiced at the time he purchased the insurance policy. A board-certified orthopedic surgeon who at the time of her disability was working as a firefighter would not be deemed totally disabled as a result of her inability to perform all the important duties of an orthopedic surgeon.

*Id*.

Pak argues that *Gross* is inapposite because it does not specify "exactly what the term 'limited' means in this context." Reply [Dkt. No. 34] 6:20-7:3. I disagree. As in *Gross*, Pak's occupation, as defined by the policy, turns on his work at the time of his disability, not any certification.

Alternatively, Pak argues that the term "limited" is vague and ambiguous, and thus "must be resolved liberally" in his favor. Reply at 6:7-7:15. He contends that the word is susceptible to more than one interpretation, including whether he was required to "dedicate 100% of his time treating pediatric patients," "spend a majority of his time" performing a pediatric anesthesiologist's duties, or be "certified in and perform the substantial and material duties" of one. *See id*. at 6:12-19.

Pak asks me to strain to create an ambiguity where none exists. *See Waller*, 11 Cal. 4th at 18-19. The word "limited" may take on different meanings in different contexts. But its usage in this context is clear. The total disability provisions contemplate that a claimant might work in more than one role. *See* Pak Decl., Ex. A at 9 ("Your occupation means the regular occupation (or occupations, *if more than one*) in which you are engaged at the time you become disabled.") (emphasis added). The medical specialty provision then focuses on whether a person's work is "limited to a *single* medical specialty." *See id*. "Limited" is defined by restriction; the context supports reading that term as a restriction to one specialty.

Therefore, under the ordinary meaning of the word "limited," the individual policy provision as a whole, and the context of the "total disability" section, Guardian's reading is correct. The policy language is clear: Pak's occupation is not determined by his specialty certification, but by whether he limited his practice to that specialty at the time of his disability.

7

**II.     Pak's Limitation of Work**

Per the policy language, Pak's "occupation" is a pediatric anesthesiologist if he limited his work to that specialty at the time of his disability. To overcome summary judgment, Guardian must show a dispute of material fact whether Pak so limited his work. Guardian has met this burden.[2]

As an initial matter, the parties offer differing descriptions of the duties of a pediatric anesthesiologist. Pak asserts that:

> A pediatric anesthesiologist is an anesthesiologist who specializes in caring for and administering anesthesia and other related services, such as providing complete perioperative care, which included pre-, intra-, and post-operative medical intervention and optimization, advanced pediatric/ neonatal life support, and acute pain management, to neonates, infants, children and adolescents.

MSJ at 8:1-7 (citing Pak Decl. at ¶ 9).

Meanwhile, Guardian offers a description from the Board:

> An anesthesiologist who specializes in Pediatric Anesthesiology provides anesthesia for neonates, infants, children and adolescents undergoing surgical, diagnostic or therapeutic procedures as well as appropriate pre- and post-operative care, advanced life support, and acute pain management.

Oppo. at 3 n.3. Guardian also asserts that Pak "himself has defined pediatric anesthesiology as the treatment of patients age 12 and younger," arguing that the patient age is therefore a central consideration in evaluating his pre-disability practice.[3] *See id*. at 14:2-6.

The duties of a pediatric anesthesiologist implicate the factual dispute at issue. Guardian asserts that the majority of Pak's work at the time of his disability was related to general, not pediatric, anesthesiology. *See id*. at 13:12-22. In support, it primarily cites its analysis of Pak's

---

[2] Guardian seeks to strike portions of Pak's declaration as inadmissible evidence. *See* Oppo. at 16-18. Most of the objections are moot, as I did not rely on these statements in deciding this motion. *See id*. The one line I cite—Pak's testimony that he "spent approximately 50% of [his] on-call time devoted to pediatric patients"—is relevant to whether Pak limited his work to that of a pediatric anesthesiologist at the time of his disability. *See* MSJ at 4:8 (citing Pak Decl. at ¶ 8).

[3] Guardian does not offer a citation to this purported assertion by Pak. *See id*. Although Guardian mentions patients 12 years old and younger in a letter that it sent Pak, it appears that in Pak's disability claim, he described the duties of a pediatric anesthesiologist as "[t]reating children under the age of 18." *See, e.g.,* Kelly Decl., Ex. 2 (Pak's disability claim), Ex. 9 (Guardian's letter).

8

CPT." *See id*. (citing Kelly Decl., Ex. 7).  That review showed that "approximately 93% of [Pak's] pre-disability time and revenue derived from general anesthesiology procedures, whereas only approximately 7% derived from pediatric anesthesiology procedures."  *Id*. at 13:16-19; *see also* Kelly Decl. at ¶ 13, Ex. 7.

Pak first argues that it would be unreasonable to say that he limited his work to pediatric anesthesiology "if, and only if, he dedicated 100% of his practice to treating pediatric patients."  *See* Reply at 5:8-10.  He contends that, like any medical specialist, his duties as a pediatric anesthesiologist included those of a general anesthesiologist as well.  *See id*. at 5:8-22.  The scope of the duties of a pediatric anesthesiologist therefore implicates Guardian's evidence about how Pak divided his time between general and pediatric anesthesiology before his disability.

Pak further argues that the CPT codes "do not provide a complete picture" of his duties as a pediatric anesthesiologist, and that he "expended a significant amount of time performing numerous additional duties involving pediatric patients that are not captured in the code reports."  *Id*. at 3:14-24.  For example, Pak contends, the CPT codes do not reflect "pediatric call, pediatric surgery consults, NICU airway management backup, PICU evaluations, curbside consults, and IV access."  *Id*.  Pak asserts that he "spent approximately 50% of his on-call time devoted to pediatric patients."  MSJ at 4:8 (citing Pak Decl. at ¶ 8).  He further argues that at the time of his disability, he practiced "the substantial and material duties of pediatric anesthesia," including:

> pediatric cases under the age of 12, pediatric calls for the hospital . . . placing pediatric invasive monitors including central lines or arterial monitoring, placing pediatric regional anesthetics, making himself available for pediatric difficult airway management for the neonatologist and obstetrician for the newborns that were delivered with or without difficult airways due to congenital malformation or genetic defects, performing acute pain management for pediatric patients, performing preoperative NICU and pediatric evaluation for surgery, and discussing anticipative anesthetic management prior to sedation for pediatric patients.

Reply at 4:10-21.

Guardian has shown a dispute of material fact whether Pak limited his work to pediatric anesthesiology, rendering summary judgment inappropriate.  How much time Pak spent performing the work of a pediatric anesthesiologist—and what that work entails—are factual

9

questions best left to a jury to decide.

## CONCLUSION

For the foregoing reasons, Pak's motion for summary judgment is DENIED.

**IT IS SO ORDERED.**

Dated: February 10, 2022



William H. Orrick
United States District Judge